**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| JEANETTE THANUPAKORN,<br><br>Plaintiff,<br><br>vs.<br><br>WEBSTER COUNTY IOWA CONFERENCE BOARD, WEBSTER COUNTY BOARD OF SUPERVISORS, MERRILL LEFFLER and KEITH DENCKLAU,<br><br>Defendants. | No. C17-03008-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Jeanette Thanupakorn is the former Webster County, Iowa, Assessor. She has sued the Webster County Conference Board (Conference Board) and Webster County Board of Supervisors (Board of Supervisors), along with Merrill Leffler and Keith Dencklau, individual members of the Board of Supervisors, alleging that they wrongfully terminated her employment as County Assessor. Counts 1 and 2 of the complaint (Doc. No. 2) are brought pursuant to 42 U.S.C. §§ 1983 and 1988 and assert claims for alleged violations of Thanupakorn's procedural and substantive due process rights under the United States Constitution. Counts 3 and 4 assert state law claims of defamation and intentional infliction of emotion distress.

This case is before me on (1) Thanupakorn's motion (Doc. No. 12) for partial summary judgment and (2) defendants' motion (Doc. No. 14) for summary judgment. Both motions are fully submitted and ready for decision. I find that oral argument is not necessary.

## II. RELEVANT FACTS

The following facts are undisputed, except where noted otherwise.

The Webster County Board of Supervisors exists pursuant to Iowa Code chapter 331 and serves as the county's elected, governing body. Among other things, a county's board of supervisors has the power to appoint and remove various county officers and employees. Iowa Code § 331.321. However, the appointment and removal of the county assessor is within the purview of another body, the Webster County Conference Board. A county's conference board consists of "the mayors of all incorporated cities in the county whose property is assessed by the county assessor, one representative from the board of directors of each high school district of the county . . . and members of the board of supervisors." Iowa Code § 441.2. A county's conference board has the power to appoint and remove the county's assessor. *Id*. §§ 441.6, 441.9.

Thanupakorn was appointed as the Webster County Assessor in 1996. As assessor, one of her primary duties was to assess real estate in the county for tax purposes at its fair and reasonable market value. Assessed property falls into different categories, including residential, commercial, industrial, multi-residential and agricultural. To determine a property's market value, the Webster County Assessor's office manager first examines whether a sale of that property was "good" and Thanupakorn checks that finding. A sale is considered "good" if it was an arms-length transaction. After determining that a sale is a "good" sale, the assessor must assess the property at 100 percent fair market value.

It is possible for the assessor to make individualized changes to property values so that each individual property is assessed at its true market value. However, the assessor may also use the Vanguard Computer Aided Mass Appraisal (CAMA) system, which

uses a formula based on depreciation, map factors and functional and economic market factors to revalue properties automatically.[1]

The assessor's activity is subject to review and supervision by the Iowa Department of Revenue (the Department), which ensures the assessments are fair and comply with the law. One way the Department reviews assessments is by conducting an equalization analysis every two years for each class of property. To do this, the Department calculates the ratio of sales price to assessed value for each arms-length property sale in a particular class. If the median ratio is between 95 percent and 105 percent, the county will not receive an equalization order from the Department. If the ratio is outside that range, the Department can issue an equalization order. When an equalization order is issued to a county, the assessed value of every property in the specified class must be adjusted by the percentage mandated in the order, regardless of whether an individual property actually changed in value.

In 2015, Thanupakorn and her staff were working on what she described as a "big project" regarding agricultural land. On August 10, 2015, the Department issued a tentative equalization order for commercial property, under which the county was required to increase the assessments of all commercial property in the county by 38 percent. This was an extraordinary adjustment. In 2014, Thanupakorn was aware that the median value, assessment value and sales ratios for commercial property were low and understood that an equalization order would be issued unless she adjusted the values herself. Thus, she had to choose between reassessing the commercial properties individually or allowing an equalization order to issue. She elected to allow the

---

[1] The parties dispute whether the system automatically revalues properties or makes changes only when authorized by the user. The parties also dispute the effect Thanupakorn's use of the CAMA system had on the properties' assessed values. Doc. No. 21 at 5–7.

equalization order to issue so she and her staff could complete the agricultural land project. Thanupakorn set a deadline of April 1 for the agricultural project.[2]

Thanupakorn did not discuss her decision with the Conference Board. Nor did she tell any county official that a large equalization order was forthcoming before the Department issued the order. She admitted that she did not perform her duty of assessing commercial property at 100 percent of fair market value.

An assessor or the Board of Supervisors may protest a tentative equalization order within ten days of its issuance. Thanupakorn did not appeal the tentative order, nor did she advise the Board of Supervisors that they could do so. No county official contested the tentative equalization order within the ten day time frame.

Ultimately, the Department allowed Webster County to appeal the equalization order even though the appeal was untimely. Four appraisers from the Department investigated the order and discovered that a number of sales did not qualify as arms-length transactions and should not have been included in the list used to determine the median ratio. The investigators inspected the properties and interviewed the parties involved in selling the properties. On October 14, 2015, Thanupakorn attended a meeting with Julie Roisen, Administrator of the Property Tax Division of the Department of Revenue, Supervisors Leffler and Dencklau, the Deputy Assessor and other members of the Department. The participants reviewed every sale that formed the basis of the 38 percent equalization order. Sales determined not to be arms-length transactions were removed from the equalization analysis. The resulting new analysis resulted in a final equalization order for a 16 percent increase, which was issued on October 19, 2015.[3]

---

[2] The defendants argue that there was no state-mandated deadline for the agricultural project's completion. Thanupakorn contends that failure to complete the agricultural project by April 1, 2015, would have created large valuation inequities between agricultural properties.

[3] Thanupakorn contends that the conclusions from this investigation were based on unsworn statements and bad information. Doc. No. 21 at 14–17.

The Conference Board scheduled a meeting for October 27, 2015. On October 23, a line item concerning Thanupakorn's work performance was added to the meeting agenda. Thanupakorn received notice of the meeting at some point prior to October 23. At the end of the October 27 meeting, the Conference Board voted to remove Thanupakorn from her position as County Assessor.[4] On October 29, 2015, Dencklau sent Thanupakorn a notice that she was being placed on administrative leave.[5] She continued to receive her regular salary and benefits.

During a meeting on December 1, 2015, the Conference Board voted to rescind the October 27 vote that removed Thanupakorn from office.[6] On December 21, 2015, Thanupakorn received a list of six potential grounds for removal from the Conference Board. She requested a hearing and a third meeting was held on January 13, 2016. At that meeting, Thanupakorn presented evidence in opposition to her removal. The Conference Board then found that five grounds of removal were supported and unanimously found that the substantiated grounds constituted nonfeasance, malfeasance or misfeasance in office such that Thanupakorn should be removed from office effective immediately.

Additional facts will be discussed as necessary below.

### III. *SUMMARY JUDGMENT STANDARDS*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[4] The parties dispute whether Thanupakorn was actually removed or simply suspended.

[5] Thanupakorn denies that the Conference Board had authority to place her on administrative leave, or that it ever voted to do so. Doc. No. 22 at 2.

[6] Thanupakorn contends that the Conference Board did not have the statutory authority to take this vote. Doc. No. 22 at 3.

affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof,

then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

On cross motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998). Because the parties seek summary judgment on some of the same issues, I will consider all the parties' arguments as to each issue, keeping in mind the separate inferences that are to be drawn from each motion. *See Wright v. Keokuk Cnty. Health Ctr.*, 399 F. Supp. 2d 938, 946 (S.D. Iowa 2005).

## IV.   ANALYSIS

In her motion, Thanupakorn argues that there is no genuine issue concerning the following facts: (1) she was removed from her position in October 2017, (2) the Board cannot fill a vacancy in the assessor's office by reinstatement and (3) any reasons the Board had for removing her from office are limited to those stated at the October 27, 2015, meeting. Doc. No. 12-2 at 2.

Defendants resist and, in their own motion, argue that all four of Thanupakorn's claims fail as a matter of law. Thanupakorn does not resist the entry of summary

judgment on her state law claims of defamation and intentional infliction of emotional distress claims. Doc. No. 30 at 2. As such, I will grant defendants' motion as to Counts 3 and 4 of the complaint. This leaves for discussion Thanupakorn's two due process claims under the United States Constitution. I will address defendants' motion for summary judgment as to those claims before addressing Thanupakorn's motion for partial summary judgment.

A.   *Procedural Due Process*

"A government employee is entitled to procedural due process only when he has been deprived of a constitutionally protected property or liberty interest." *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994). The parties do not dispute that Thanupakorn had a protected property right in her position as County Assessor. Iowa Code § 441.9; Doc. No. 14-1 at 8. Therefore, the only issue to address is whether the requirements of procedural due process were satisfied. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

Procedural due process requires a pre-termination hearing "in some form." *Pena v. Kindler*, 863 F.3d 994, 998 (8th Cir. 2017). When post-termination proceedings are available, the pre-termination proceedings do not have to be elaborate. *Id.* It is sufficient that the employee receive oral or written notice of the charges, an explanation of the employer's evidence and an opportunity to present her side of the story. *Id.* There need not be a delay between the notice and the opportunity to respond. *Id.* In fact, when post-termination proceedings are available, "informal meetings with supervisors" may be sufficient. *Sutton v. Bailey*, 702 F.3d 444, 447 (8th Cir. 2012).

The purpose of pre-termination proceedings is to serve as "an initial check against mistaken decisions" and not to "resolve the propriety of the discharge." *Pena*, 863 F.3d at 998 (quoting *Loudermill*, 470 U.S. at 545); *Schleck v. Ramsey Ct.*, 939 F.2d 638, 641 (8th Cir. 1991) ("[T]he pretermination hearing need not definitively resolve the propriety of the discharge."). Of importance here, the Eighth Circuit has held that the hearing

does not have to precede the termination decision, only the termination of salary and benefits. *Schleck*, 939 F.2d at 641; *Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1391 (8th Cir. 1988) (because the plaintiff was given the opportunity to be heard before the termination of his salary, his due process rights were not violated).

> Iowa Code § 441.9 states:
>
> The assessor may be removed by a majority vote of the conference board, after charges of misconduct, nonfeasance, malfeasance, or misfeasance in office shall have been substantiated at a public hearing, if same is demanded by the assessor by written notice served upon the chairperson of the conference board. For purposes of this section, "misconduct" includes but is not limited to knowingly engaging in assessment methods, practices, or conduct that contravene any applicable law, administrative rule, or order of any court or other government authority.

The parties disagree about when Thanupakorn was removed from office. The first potential date is on October 27, 2015. Thanupakorn received notice of the meeting on October 23 and on that day an agenda item was added concerning her work performance. She was aware the Conference Board was dissatisfied with her work. The minutes for the October 27 meeting indicate the Conference Board discussed various issues relating to Thanupakorn's work. Doc. No. 14-3 at 103–04. There was a closed session and then, after that closed session, Conference Board member Mark Campbell made a motion to remove Thanupakorn from office. *Id.* at 105. Thanupakorn argued that "it was not on the agenda to discuss termination." *Id.* Members of the Conference Board responded that Thanupakorn could request a meeting after the vote to remove, during which the decision could be rescinded. *Id.* at 106–07. Campbell stated that Thanupakorn could not report to work the next day as a result of the vote. *Id.* at 107.

Nonetheless, it is undisputed that Thanupakorn continued to receive her salary and benefits after the October 27 meeting. Doc. No. 21 at 20. Whether the Conference Board intended to remove her from office at the October 27 meeting, and whether the Conference Board violated the statute's procedural requirements for removing or reinstating Thanupakorn as County Assessor, are not material to the due process analysis

because her benefits and salary were not terminated on October 27. *See Lee v. Hutchinson*, 854 F.3d 978, 981 (8th Cir. 2017) ("[A] violation of state procedural law does not itself give rise to a due process claim"); *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("[T]he Due Process Clause does not federalize state-law procedural requirements."). Thanupakorn's salary and benefits continued until the second potential date of removal, January 13, 2016. Therefore, the question is whether she received sufficient notice and opportunity before her benefits terminated on that date.

In December 2015,[7] Thanupakorn received a list of potential grounds for removal.[8] At Thanupakorn's request, the Conference Board met on January 13, 2016, to discuss those grounds. It is undisputed that Thanupakorn took the opportunity to present evidence during that meeting. Doc. No. 21 at 22; *see also* Doc. No. 14-3 at 100. By then, she was aware of the alleged grounds for removal and knew that she could be removed from her position. She had the opportunity to be heard and to present evidence. At the conclusion of the meeting, the Conference Board found that five of the six grounds for removal had been substantiated and that those grounds constituted nonfeasance, malfeasance or misfeasance in office pursuant to Iowa Code § 441.9. As such, the Conference Board voted unanimously to remove Thanupakorn from office.

---

[7] The defendants state that Thanupakorn received the list of grounds for her removal on December 21, 2015, which Thanupakorn admits. However, the date on the letter cited by defendants is December 1, 2015. Doc. No. 14-3 at 91. It appears the same version of this letter was also sent on December 7 and 9. *Id.* at 93, 96.

[8] These grounds were: (1) failure to timely appeal the equalization order; (2) advising the Conference Board there was nothing that could be done to challenge the order; (3) failure to provide the Department of Revenue a list of commercial sales that accurately reflected the valuation of commercial property; (4) failure to provide meaningful and beneficial assistance to the Conference Board; (5) "[f]ailure to provide accurate information to the Conference Board regarding the appeal rights of individual property owners"; (6) failure to provide accurate and complete information on crop assessment issues. Doc. No. 14-3 at 91. Whether these grounds properly constitute misconduct, misfeasance, malfeasance or nonfeasance is not relevant for the purposes of the procedural due process analysis. *See Pena*, 863 F.3d at 998 (stating that the purpose is not to decide the propriety of the discharge).

Because it is undisputed that Thanupakorn had notice and the opportunity to be heard before her salary and benefits were terminated, I find there is no question of material fact preventing the entry of summary judgment in favor of the defendants on her procedural due process claim.

B.     *Substantive Due Process*

Substantive due process protects individual liberties from government actions "regardless of the fairness of the procedures used to implement them." *Ganley v. Minneapolis Park & Recreation Bd.*, 491 F.3d 743, 749 (8th Cir. 2007) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). In order for the state actor's conduct to be a constitutional violation, it must be egregious, arbitrary or conscience shocking. *Skokos v. Rhoades*, 440 F.3d 957, 962 (8th Cir. 2006). The plaintiff must demonstrate that the government's action was "sufficiently outrageous' or 'truly irrational.'" *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 628 (8th Cir. 2001), *as corrected* (Mar. 27, 2001), *as corrected* (May 1, 2001) (quoting *Anderson v. Douglas Cty.*, 4 F.3d 574, 577 (8th Cir. 1993)). Alternatively, the plaintiff must show that the "offender violated a fundamental right in a way that 'shocks the conscience.'" *Keefe v. City of Minneapolis*, 785 F.3d 1216, 1222 (8th Cir. 2015). This is a high standard, and requires more than a simply careless or unwise action. *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 937 (8th Cir. 2012). Conduct "intended to injure in some way unjustifiable by any government interest" is more likely to rise to that high level. *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002).

Thanupakorn argues that the substantive due process standard is different when applied to the removal of a government official as opposed to the removal of a government employee. Doc. No. 20 at 5. She cites no authority supporting this proposition.[9] In

---

[9] Thanupakorn cites *State v. Watkins*, 914 N.W.2d 827 (Iowa 2018), a case that has no applicability here. *Watkins* involved the removal of an elected county attorney pursuant to an Iowa statute. *Id.* at 831. The Iowa Supreme Court held that the statute requires proof that the

*Bailiff v. Adams Cty. Conference Bd.*, 54 F. Supp. 2d 923 (S.D. Iowa 1999), a former county assessor brought, among other claims, a violation of substantive due process claim. The court applied the "shock the conscience" standard and gave no indication the standard should be different because the plaintiff was a government official. *Id*. at 935.

Thanupakorn's argument relies on her theory that the Conference Board violated state law by removing her for failing to perform duties that were not duties prescribed by the statute. Even if this is true, there must be more than a violation of state law. *Singleton v. Cecil*, 176 F.3d 419, 425 (8th Cir. 1999); *Young*, 244 F.3d at 628. The action must be truly irrational, egregious or arbitrary and capricious. Here, the Conference Board provided reasons, both in October 2015 and January 2016, for removing Thanupakorn from office. The reasons in October were that she did not tell the Board of Supervisors about appealing the equalization order and did not properly classify cropland versus non-cropland. Doc. No. 12-3 at 5–6, 14, 17, 24. In January, the reasons were failure to appeal the equalization order, failure to provide a list of accurately valued commercial property, failure to provide "meaningful and beneficial assistance" to the Conference Board, advising the Conference Board that it could not challenge the order and failure to provide accurate information on crop assessment issues. Doc. No. 15-2 at 4.

Viewing the record in the light most favorable to Thanupakorn, I find that she has failed to present evidence to support a finding that her removal from office was "sufficiently outrageous," "truly irrational" or "shocks the conscience." Even if her removal was unwise, or even careless, the undisputed facts concerning Thanupakorn's job performance and the Conference Board's decision do not, as a matter of law, support a claim that defendants violated her substantive due process rights.

---

public official committed the charged acts of misconduct in office with willful intent and evil purpose. *Id*. at 837. This holding as to the application of an Iowa statute has nothing to do with the federal constitutional right to substantive due process.

## C. Thanupakorn's Motion for Summary Judgment

In her motion, Thanupakorn argues that defendants' reasons for removal must be limited to those stated during the October 27, 2015, meeting. Doc. No. 12-2 at 7. She also argues that the vote on October 27 created a vacancy that the Conference Board did not properly fill, meaning that her removal was effective on that date. *Id.* at 4–6. As discussed above, however, I find that the relevant time period for the due process analysis is when Thanupakorn's salary and benefits were terminated. Applying the analysis to that time period, I have found that Thanupakorn's procedural and substantive due process claims fail as a matter of law. As such, her motion for partial summary judgment will be denied.

## V. CONCLUSION

For the reasons set forth herein:

1. Defendants' motion (Doc. No. 14) for summary judgment is **granted in its entirety**. All of plaintiff's claims are hereby **dismissed with prejudice**.

2. Plaintiff's motion (Doc. No. 12) for partial summary judgment is **denied**.

3. Because this order disposes of all pending claims, judgment shall enter in favor of the defendants and against the plaintiff. The Clerk shall **close this case.**

**IT IS SO ORDERED.**

**DATED** this 12th day of October, 2018.

_____
Leonard T. Strand, Chief Judge